IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Case No. 2:21-cv-20102-JTF-2 |
| ) | |
| ALEXANDRIA GARNER,  ) | |
| ) | |
| Defendant.  ) | |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S
MOTION TO DISMISS OR SUPRRESS EVIDENCE**

Before the Court is Defendant Alexandria Garner's Motion to Dismiss or Suppress, filed on February 16, 2022. (ECF No. 42.) The Motion was referred to the Magistrate Judge on February 18, 2022. (ECF No. 43.) The Magistrate Judge issued a Report and Recommendation ("R & R") to Deny Defendant's Motion on May 9, 2022. (ECF No. 55.) Defendant filed his Objections to the R & R on May 23, 2022. (ECF No. 56.) The United States filed its Response to the Objections on July 5, 2022. (ECF No. 65.) For the reasons provided herein, the Court **ADOPTS** the Magistrate Judge's R & R, and **DENIES** Defendant's Motion to Dismiss or Suppress.

## II. LEGAL STANDARD

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrate judges." *See e.g. Baker v. Peterson*, 67 Fed. App'x. 308, 311 (6th Cir. 2003); Fed. R. Civ. P. 72(a). A district court judge must review dispositive motions under the *de novo* standard. *See Matthews v. Weber*, 423 U.S.

261, 275 (1976); *Baker*, 67 Fed. App'x. at 311; 28 U.S.C. § 636 (b)(1)(B). After review, the district court is free to accept, reject or modify the Magistrate Judge's proposed findings or recommendations. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Any party who disagrees with a Magistrate Judge's recommendation may file written objections. *Id.* at 142; Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Tenn. West. LR 72.1(g)(2). A failure to file specific objections to a Magistrate Judge's report does not meet the requirement of filing an objection at all. *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir. 1991); *McCready v. Kamminga*, 113 Fed. App'x. 47, 49 (6th Cir. 2004). A district judge should adopt the findings and rulings of the Chief Magistrate Judge to which no specific objection is filed. *Brown v. Board of Educ. of Shelby County Schools*, 47 F.Supp.3d 665, 674 (W.D. Tenn. 2014). "Pro se complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed. . . . Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### III.  FINDINGS OF FACT

In the R & R, the Chief Magistrate Judge sets forth proposed findings of fact. (ECF No. 55, 2–5.) Facts pertinent to the Motion to Dismiss or Suppress are as follows: A Naval Criminal Investigative Service ("NCIS") Special Agent was stationed at the Navy base in Millington, Tennessee working on general crimes cases, including drug investigations. (ECF No. 55, 2.) NCIS received information that an individual who worked on the base had been selling marijuana on base. (*Id.*) That individual confessed to selling marijuana and identified Defendant Garner as a supplier. (*Id.*) Garner was not military personnel and did not work on the base. (*Id.*) NCIS then contacted officers at the Millington Police Department ("Millington PD") and told them Garner

was selling marijuana to an individual on the base.[1] (*Id.* at 9.) The Millington PD officers decided to investigate Garner, with NCIS assistance. (*Id.* at 10.) NCIS's original on-base target agreed to cooperate and participated in multiple controlled purchases of marijuana from Garner. (*Id.* at 10.) The cooperator eventually brought along an undercover Millington PD officer who was introduced to Garner. That undercover officer made what was the fifth controlled purchase from Garner. (*Id.* at 10, 39–40.) NCIS provided the audio/video equipment to record the purchases, as well as the money used in the transactions. (*Id.* at 24, 40.) NCIS agents were involved in each controlled purchase operation and were present at the Millington PD precinct before the purchases. (*Id.* at 24, 26, 32–33, 49– 50.) One of the controlled purchases occurred at Garner's home where she sold marijuana to the cooperator and an undercover Millington police officer. NCIS Special Agent Nash photographed the marijuana obtained from the controlled purchase for his reports. (*Id.* at 28.) He could not remember if Millington PD kept custody of the purchased marijuana. (*Id.* at 27.) He probably ran Garner through multiple federal databases to determine her criminal history, which is a normal practice for any case file he opens. (*Id.* at 29.) Millington PD officers obtained a search warrant for Garner's residence. The probable cause presented in the search warrant affidavit was limited to five controlled purchases from Garner, all of which involved NCIS agents and Millington PD. Although NCIS did not assist in drafting the warrant, NCIS was present and assisted Millington PD in the execution of the warrant. (*Id*. at 11& 30.)

**Plaintiff's Objections to the Proposed Findings of Fact**

**<u>Objection No. 1: NCIS Databases</u>**

Defendant objects to the failure of the proposed facts to clarify that "the databases the NCIS agents had access to and did utilize were not available to State law enforcement." (ECF No. 56,

---

[1] For clarity, NCIS agents could not confirm that the Defendant sold any controlled substances on the base or that she had ever set foot on the base. (ECF No. 65-1, 20.)

1.)   While the R & R did not specifically mention whether local law enforcement had access to the particular database that NCIS Special Agent Nash utilized to examine Garner's criminal history, it is apparent that NCIS provided various resources to local law enforcement throughout the investigation. The R & R explained that NCIS provided audio/equipment to record the controlled purchases during the investigation, which Millington PD did not have, as well as the money used in the transactions.  It is a normal practice for NCIS to provide money and equipment to local law enforcement.  (ECF No. 55, 4.) As noted, it is Defendant's objection that the Magistrate Judge omitted the fact that local law enforcement did not have access to the databases used by NCIS.   The objection is **GRANTED**.  However, adding this fact does not change the Court's review and ultimate findings with regard to the R&R and Defendant's objections.

Although not listed as an objection, Defendant elaborates on whether the resources provided by NCIS such as money, surveillance cameras, and vehicles constituted "excessive military involvement" that the Magistrate Judge failed to consider.  (ECF No. 56, 4.) Defendant refers to this as a "findings of law" objection (*Id.*) However, a review of the R&R shows that the Magistrate Judge did not ignore the involvement of NCIS in the Millington PD investigation of Garner.  (*See* ECF No. 55, 23.)  To the extent that Garner objects to the Magistrate Judge's consideration of NCIS's involvement in a local investigation as lacking, the objection is overruled.

Accordingly, the Court **GRANTS** Defendant's objection to the Magistrate Judge's proposed finding of fact regarding the NCIS database search, but otherwise **ADOPTS** the Magistrate Judge's findings of fact.

**Objection No. 2: Special Agent Nash Testimony**

Defendant objects to Special Agent Nash's testimony that "The Navy nexus in this case was the indication that Garner was selling marijuana to at least one person on base." (ECF No. 56, 1.) Garner supports her objection by asserting, "there was absolutely no proof presented that

4

Garner sold to anyone 'on base.'" (*Id.*)  This is true, and the Magistrate Judge's initial proposed facts need clarification.  Although the initial factual finding seemed to indicate that Garner may have sold marijuana on the base, subsequent facts clearly indicate that Garner sold the drugs "to someone who subsequently took the drugs and/or sold them to base employees." (ECF No. 55, 5.) In fact, the Magistrate Judge included other parts of Special Agent Nash's testimony where he admitted "he was not aware of Garner ever making a drug sale on the base or even setting foot on base." (*Id.*) Therefore, the Court **GRANTS** Defendant's objection and clarifies that Special Agent Nash testified that he was not aware that Garner ever sold marijuana on base.  However, the Court **ADOPTS** the Magistrate Judge's proposed finding of fact.

### IV.  ANALYSIS

The Magistrate Judge recommends that the Court deny Defendant's Motion to Dismiss or Suppress Evidence because: 1) the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385, does not govern the conduct of the NCIS agents in this case; 2) Department of Defense Instruction ("DoDI") 3025.21, which applies PCA-like restrictions to the Navy, also does not apply to the NCIS agents in this matter because they are not under the direct control of a military officer; 3) the agents acted within the authority of DoDI 5505.03 which provides that "it is DoD policy that DCIOs shall initiate investigations in accordance with law and governing regulations, but do not require approval from any authority outside of the DCIO" so long as "DCIOs identify a nexus before making a determination to initiate any criminal investigation or operation." (ECF No. 55, 5 & 9.) Defendant generally objects to the Magistrate Judge's finding that a military nexus was present in this case. Such a nexus, according to the Magistrate Judge, allowed NCIS to launch an investigation into the Defendants' drug activity. (ECF No. 56, 2.)  Less broadly, Defendant objects to the Magistrate Judge's legal conclusions that: 1) a "military-nexus" was required in this

5

matter, and that the facts of this case satisfied the nexus element; and that 2) DoDI 3025.21 does not apply to the NCIS agents in this matter.  (*See* ECF No. 56, 2 & 4.)

**Objection No. 3: Military Nexus**

Defendant alleges that the nexus requirement derived from DoDI 5505.03, "Initiation of Investigation by Defense Criminal Investigative Organizations ("DCIOs")" is not satisfied by the facts of this case.  The Magistrate Judge found that NCIS is included within the list of organizations classified as a DCIO and thus governed by the instruction.

Defendant begins her nexus objection by asserting that the PCA applies in this matter. The PCA's purpose "is to prevent use of the federal army to aid civil authorities in the enforcement of civilian laws." *Gilbert v. United States*, 165 F.3d 470, 472 (6th Cir. 1999).  The R & R correctly explained that the PCA did not apply to the underlying facts at the time they occurred because the PCA did not apply to the Navy.  (ECF No. 55, 5 & 9,)  Rather, DoDI 5505.03 governs the actions of the NCIS agents here.  The instruction provides, "it is DoD policy that DCIOs shall initiate investigations in accordance with law and governing regulations, but do not require approval from any authority outside of the DCIO."  DCIOs are defined to include NCIS and requires DCIOs to "identify a DoD nexus before making a determination to initiate any criminal investigation or operation." *Id.* § 4(d).  The DoD nexus requirement is satisfied when it is shown that there is a reasonable likelihood that criminal activity may be occurring on a DoD facility or installation. This would necessarily include, for example, a DoD employee being a victim of a crime or the target of an investigation.  *Id.*

The Defendant asserts that "[n]o sailor was a victim of or criminal coconspirator with …. Ms. Garner…. and her conduct is absolutely void of the nexus form (sic) the DoDI."  (ECF No. 56, 3.)  However, the nexus allowing NCIS to launch an investigation into Garner was the fact the agents received information that the Defendant was selling drugs to a base employee who was

6

reselling those drugs to others on base.  It is irrelevant whether Garner knew for certain that she was selling drugs to a Navy employee. What is relevant is that drugs were sold on the base by a Navy employee, and that Garner was identified as the supplier of the drugs.   Thus, it is sufficient enough for purposes of satisfying the nexus requirement that Garner was the supplier of drugs to a Navy employee. *See Fox v. State*, 908 P.2d 1053, 1057 (Alaska Ct. App. 1996) (finding clear military purpose where a soldier tested positive for narcotics and Army investigators launched an investigation into the source of supply – an off-base civilian who sold drugs to military personnel).

The Court **REJECTS** Defendant's objection and **ADOPTS** the Magistrate Judge's finding that a military nexus was required by DoDI 5505.03 and also satisfied by the underlying facts of this matter.

**<u>Objection No. 4: DoDI 3025.21's Application to Civilian Employees</u>**

Defendant insists that the Magistrate Judge erred in finding that DoDI 3025.21 does not apply to civilian employees.  Although the Magistrate Judge concluded that DoDI 3025.21 did not apply, she also  explained that DoDI 3025.1 permits certain direct assistance by the DoD to civilian law enforcement authorities, so long as the assistance does not "serve as a subterfuge to avoid the restrictions of the Posse Comitatus Act." (ECF No. 55, 7.) Thus the R & R insinuated that DoDI 3025.21 would have allowed the NCIS agents to cooperate with Millington Police Department in this matter because the instruction allowed it.  (*Id.*) However, the Magistrate Judge ultimately found that the instruction does not apply to civilian employees, which NCIS agents are considered to be.  (*Id.* at 8.)

Although Defendant objects to the Magistrate Judge's finding regarding the DoDI 3025.21, the instruction does not weigh in Defendant's favor. The Department of Defense ("DoD") and the Secretary of the Navy have issued "PCA-like restrictions" to the Navy.  *See United States v. Chon*, 210 F.3d 990, 993 (9th Cir. 2000).  DoDI 3025.21, titled "Defense support

7

of Civilian Law Enforcement Agencies," generally allows DoD support to Federal, State, and local civilian law enforcement agencies. DoDI 3025.21, § 1(a) (Feb. 27, 2013). It indicates that the PCA imposes restrictions on DoD participation in civilian law enforcement activities. *Id.* at encl. 3, § 1(a)(1). The instruction provides that "[a]ctions taken for the primary purpose of furthering a DoD . . . function of the United States, regardless of incidental benefits to civil authorities," are not prohibited, so long as those actions do not "serv[e] as a subterfuge to avoid the restrictions of the Posse Comitatus Act." *Id.* at encl. 3, § 1(b)(1). However, NCIS is not governed by this particular instruction because NCIS agents are not under the direct control of military officers. Therefore, they are considered to be civilian employees.

Within her objection, Defendant alleges that the Magistrate Judge cited extensively but ultimately disregarded the decision in *U.S. v. Chon*, 210 F.3d 990, 993 (9th Cir. 2000). (ECF No. 56, 4.) In that case, the court found that although NCIS is "civilian directed with a civilian chain of command, NCIS is accountable to the Navy" *Id.* at 994. However, even if the Magistrate Judge followed the reasoning of *Chon*, it would not aid the Defendant's cause. This is because application of DoDI 3025.21 to NCIS in this matter would still have permitted NCIS to investigate Garner's drug activity and allow NCIS to share that information with Millington Police Department.

Therefore, the Court **REJECTS** Defendant's objection and **ADOPTS** the Magistrate Judge's finding that DoDI 3025.21 does not apply in this matter.

## **CONCLUSION**

After a *de novo* review of the record, the Court hereby **GRANTS** Defendant's factual objections as noted above, and otherwise **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Defendant's Motion to Dismiss or Suppress.

**IT IS SO ORDERED** this 2nd day of February, 2023.

                                                   *s/John T. Fowlkes, Jr.*
                                                   JOHN T. FOWLKES, JR.
                                                   UNITED STATES DISTRICT JUDGE